**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

WINSTON DAVENPORT,
          *Defendant-Appellant.*

No. 06-30596

D.C. No.
CR-06-00006-
1-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
November 6, 2007—Seattle, Washington

Filed March 20, 2008

Before: William C. Canby, Jr., Susan P. Graber, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould;
Dissent by Judge Graber

## COUNSEL

Darla J. Mondou, Marana, Arizona, for the defendant-appellant.

Marcia Hurd and Eric B. Wolff, U.S. Attorney's Office, Billings, Montana, for plaintiff-appellee United States of America.

## OPINION

GOULD, Circuit Judge:

Winston Davenport appeals the district court's denial of Davenport's motion to withdraw his guilty plea and the sentence that the district court imposed on him for one count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2) and one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). After the district court denied Davenport's motion to withdraw his guilty plea,

Davenport received a 78-month sentence of incarceration for each of the two counts, to be served concurrently, as well as concurrent life terms of supervised release for each count.

In this opinion we address whether Davenport's conviction for both 18 U.S.C. § 2252A(a)(2), or receipt of child pornography, and 18 U.S.C. § 2252A(a)(5)(B), or possession of child pornography, offends double jeopardy when the conduct underlying both offenses is the same.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we determine that Davenport's simultaneous conviction for both receipt and possession of child pornography violates the Fifth Amendment's prohibition on double jeopardy. We reverse and remand to the district court for further proceedings consistent with this opinion.

## I

In September of 2005, the Helena, Montana office of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") learned that an IP address associated with Davenport had been used to access a file-sharing program and download images of child pornography from other computer users. The ICE investigated Davenport's involvement with child pornography, and forensic analysis of Davenport's computer revealed 496 images and 334 videos containing child pornography, child erotica, or other possible images of interest. Some of these materials depicted violence or involved children under the age of twelve.

Davenport was indicted by a grand jury on February 16, 2006 on one count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2), one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), and

---

[1]Davenport's other claims relating to the denial of his motion to withdraw his guilty plea and to his sentence are the subject of a separate, unpublished memorandum disposition filed contemporaneously with this opinion.

one count of forfeiture under 18 U.S.C. § 2253(a) which requires defendants convicted of child pornography offenses to relinquish all rights to the computer on which the pornography was found. Davenport entered into a plea agreement with the government on April 21, 2006, waiving his right to appeal issues regarding his conviction but not his sentence, in exchange for a promise that the government would recommend a sentence of either the mandatory statutory minimum or the bottom of the Guidelines range, whichever was higher. A change of plea hearing was held on April 24, 2006, at which Davenport stated under oath, among other things, that he was guilty of each of the elements of both receipt and possession of child pornography.

At a sentencing hearing held on October 25, 2006, Davenport received 78 months of incarceration for the receipt and possession counts, each, with the two sentences to be served concurrently, followed by two concurrent lifetime terms of supervised release. The judgment recording this conviction and sentence was entered on October 27, 2006. Davenport now argues, for the first time on appeal, that his sentence for both receipt and possession of child pornography is impermissible because the two convictions, based on the same conduct, are multiplicitous, in violation of the Fifth Amendment's Double Jeopardy Clause.

**II**

Although we normally review de novo claims of double jeopardy violations, *United States v. Jose*, 425 F.3d 1237, 1240 (9th Cir. 2005), we review issues, such as the present one, not properly raised before the district court for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 730-36 (1993); *United States v. Valenzuela*, 495 F.3d 1127, 1130 (9th Cir. 2007). Under the plain error standard, we will affirm Davenport's sentence unless: (1) there has been an error in the proceedings below; (2) that error was plain; (3) it affected substantial rights; and (4) it seriously

affected the fairness, integrity, or public reputation of judicial proceedings. *Olano*, 507 U.S. at 733; *Valenzuela*, 495 F.3d at 1130.

### III

**[1]** The Fifth Amendment's prohibition on double jeopardy protects against being punished twice for a single criminal offense. U.S. Const. amend. V.; *Brown v. Ohio*, 432 U.S. 161, 165 (1977). When multiple sentences are imposed in the same trial, "the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown*, 432 U.S. at 165. When a defendant has violated two different criminal statutes, the double jeopardy prohibition is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other. *Rutledge v. United States*, 517 U.S. 292, 297 (1996). To determine whether two statutory provisions prohibit the same offense, we must examine each provision to determine if it "requires proof of a[n additional] fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Ball v. United States*, 470 U.S. 856, 861 (1985); *United States v. Williams*, 291 F.3d 1180, 1186-87 (9th Cir. 2002), *overruled on other grounds by United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007) (en banc). We also employ this analysis, commonly known as the *Blockburger* test, to determine whether one offense is a lesser included offense of another. *Rutledge*, 517 U.S. at 297. If two different criminal statutory provisions indeed punish the same offense or one is a lesser included offense of the other, then conviction under both is presumed to violate congressional intent. *See Missouri v. Hunter*, 459 U.S. 359, 366-67 (1983).

Davenport advances this basic proposition that we have adopted in other statutory contexts: It is impossible to 'receive' something without, at least at the very instant of 'receipt,' also 'possessing' it. As we have recognized else-

where, "federal statutes criminalizing the receipt of contraband [generally] require a knowing acceptance or taking . . . possession of the prohibited item." *United States v. Romm*, 455 F.3d 990, 1001 (9th Cir. 2006) (internal quotation marks omitted); *see also United States v. Mohrbacher*, 182 F.3d 1041, 1048 (9th Cir. 1999) (looking to the relevant statute's plain language and adopting, for statutory interpretation purposes, the ordinary meaning of the word "receive," namely "to take . . . into one's possession").

From this, Davenport urges us to conclude that the offenses described in 18 U.S.C. § 2252A(a)(2) also cover the offenses described in 18 U.S.C. § 2252A(a)(5)(B), so that possession is a lesser included offense of receipt. Davenport asserts that, while the government may have been within constitutional boundaries to include both offenses in the indictment, and could permissibly have continued to prosecute Davenport for both offenses through trial, *see Ball*, 470 U.S. at 865, entering judgment against him on these counts was multiplicitous and therefore in violation of the Fifth Amendment's prohibition of double jeopardy. We agree.

**[2]** We begin by comparing the text of each provision. *See Williams*, 291 F.3d at 1187 (citing *Carter v. United States*, 530 U.S. 255, 260-61 (2000) ("The Supreme Court has recognized that comparing statutes to determine whether one set of elements is a subset of another requires a purely textual comparison."). 18 U.S.C. § 2252A(a)(2), the "receipt" provision, punishes: "Any person who . . . knowingly receives or distributes . . . any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer . . ." 18 U.S.C. § 2252A(a)(5)(B), the "possession" provision, criminalizes the "knowing[ ] possess[ion of] any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced

using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer. . . ."

The government contends that the receipt and possession provisions are not multiplicitous because each provision requires proof of an element that the other does not. First, it asserts that the receipt provision, 18 U.S.C. § 2252A(a)(2), requires that the pornographic material be "shipped or transported in interstate . . . commerce by any means, including by computer," while in 18 U.S.C. § 2252A(a)(5) the pornography need only be "produced using materials that have been . . . shipped or transported in interstate . . . commerce." Thus, the government argues, entirely homemade child pornography may support a conviction for violating the possession but not the receipt provision. Second, the government contends that the affirmative defense in 18 U.S.C. § 2252A(d), applicable to 18 U.S.C. § 2252A(a)(5) but not to 18 U.S.C. § 2252A(a)(2), constitutes "proof of a[n additional] fact," under the *Blockburger* test, required for possession but not for receipt. We consider and reject the government's *Blockburger* analysis.

[3] In so far as the interstate commerce nexus is concerned, we discern no difference between the positions advocated by the government and Davenport, respectively. Both parties recognize that the interstate commerce requirement is technically different for receipt and possession. Moreover, both parties recognize that the receipt provision necessarily requires shipment of the pornography, while the possession provision may meet the interstate commerce nexus either by shipment or by alternative means.[2] Indeed, by meeting the interstate commerce nexus required for receipt, one necessarily also sustains the required possession nexus: under 18 U.S.C.

---

[2]Because we accept the position of the parties with regard to the element of interstate shipment, we need not address the government's additional point that it is possible to be guilty of possessing pornography knowingly without having knowingly received it.

§ 2252A(a)(5)(B), the child pornography may itself have "been mailed, or shipped or transported in interstate or foreign commerce by any means . . . *or* . . . produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means." *Id.* (emphasis added). Because possession's nexus requirement can be met in one of two ways and receipt's nexus requirement is one of those two ways, then at least as to the interstate commerce nexus, a conviction for receipt necessarily includes proof of the elements required for conviction under possession, and possession is a lesser included offense of receipt.

**[4]** In contrast, the government's argument fails when it attempts to show that the crime of possession *requires* proof of an element that the crime of receipt does not. The failure inheres in the government's resort to the affirmative defenses in Section 2252(d). To explain why, we first revisit the *Blockburger* test, which commands us to examine each provision to determine if it "*requires* proof of a[n additional] fact which the other does not." *Blockburger*, 284 U.S. at 304 (emphasis added). The government's argument overlooks the nature of affirmative defenses generally, and in particular of the type found in 18 U.S.C. § 2252A(d). Affirmative defenses are complete defenses that, once proven by the defendant, negate criminal liability for an offense, notwithstanding the government's ability otherwise to prove all elements of that offense beyond a reasonable doubt. The most significant difference, for purposes of our *Blockburger* analysis, between the elements of 18 U.S.C. § 2252A(a)(2) and (a)(5) and the affirmative defense found in 18 U.S.C. § 2252A(d) is that, unless a defendant asserts that affirmative defense, the government need not negate it to obtain a conviction. Accordingly, the factual prerequisites of 18 U.S.C. § 2252A(d)—namely, that the defendant possessed fewer than three images of child pornography and, among other things, promptly either took reasonable steps to destroy each image or reported the matter to law enforcement—are not facts that *require* proof under *Blockburger* at all. *See* , *e.g.*, *Patterson v. New York*, 432 U.S.

197, 206-07, 209-10 (1977) (holding that the federal constitution does not require proof of the nonexistence of all affirmative defenses and that, if a state "chooses to recognize a factor that mitigates the degree of criminality or punishment," then as long as such mitigating circumstance does not serve to negate any of the elements of the criminal offense, the state need not prove the mitigating factor's nonexistence).

**[5]** Noting the differences between an element of and an affirmative defense to a crime, the Second Circuit has stated: "For these reasons, we have never conflated an affirmative defense as the functional equivalent of an element of an offense, even when . . . an element of the crime and the affirmative defense 'overlap in the sense that evidence to prove the latter will often tend to negate the former.' " *Aparicio v. Artuz*, 269 F.3d 78, 98 (2d Cir. 2001) (quoting *Martin v. Ohio*, 480 U.S. 228, 234 (1987)). We agree, and decline to consider affirmative defenses, such as that in 18 U.S.C. § 2252A(d), that do not directly negate an element of the crime but instead address mitigating circumstances, as "facts" that "require" proof for purposes of the *Blockburger* analysis.[3]

Having concluded that the conviction presents a problem under the *Blockburger* analysis, we turn to the dissent's argument that congressional intent nonetheless mandates that we uphold the multiplicitous conviction. As the dissent notes, "[t]he *Blockburger* test is a 'rule of statutory construction,'

---

[3]Some affirmative defenses, by contrast, negate one or more of the elements required for a crime. Different principles apply to such affirmative defenses: "[i]f a[n affirmative] defense negates an element of the crime, rather than mitigates culpability once guilt is proven, it is unconstitutional to put the burden of proof on the defendant." *United States v. Solorzano-Rivera*, 368 F.3d 1073, 1079 (9th Cir. 2004) (citing *Walker v. Endell*, 850 F.2d 470, 472 (9th Cir. 1988)). Thus, such an affirmative defense would in reality be an element requiring the government's proof of the converse of the affirmative defense beyond a reasonable doubt. However, the affirmative defense in 18 U.S.C. § 2252A(d) is not such a defense; it concerns mitigating circumstance and does not negate one of possession's elements.

and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Albernaz v. United States*, 450 U.S. 333, 340-342 (1981); *see also Hunter*, 459 U.S. at 368. However, this proclamation retains the basic premise that: "[i]n resolving . . . [a] contention that Congress did not intend to authorize multiple punishment for violations of [two statutes], our starting point must be the language of the statutes. Absent a 'clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' " *Albernaz*, 450 U.S. at 336 (*quoting Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).

We disagree with the dissent's conclusion that Congress has "clearly expressed" a "legislative intention to the contrary." Relying on *Hunter*, the dissent argues that Congress, by listing multiple harms associated with child pornography and indicating a purpose to treat child pornography severely, manifested its intent to impose multiple punishments even if the crimes were the same under the *Blockburger* test. First, the dissent asserts that Congress identified two distinct harms. Yet nowhere in its congressional findings does Congress explicitly frame receipt and possession as two distinct harms; the dissent's characterization of two distinct harms emanating from receipt and possession, while perhaps reasonable, is superimposed onto Congress's findings. An equally plausible interpretation of Congress's findings is that the harms Congress identified emanate from the general existence of child pornography, and relate simultaneously to both receipt and possession of those illicit materials.[4]

Next, the dissent argues that because under the original 1996 laws receipt and possession were clearly two multiply-

---

[4]*Cf. Rutledge*, 517 U.S. at 304 ("If anything, the proximity [in the U.S. Code of the two crimes at issue] indicates that Congress understood them to be directed to similar, rather than separate, evils.").

punishable crimes under *Blockburger*, and because Congress intended its 1998 amendments to make child pornography laws tougher, it therefore must be the case that Congress intended that receipt and possession remain separate crimes. The dissent is correct that Congress's 1998 amendments were motivated by an intent to toughen its child pornography laws. Yet the 1998 amendments achieved that intent in several ways: First, Congress increased some of the penalties for child pornography offenses. *See* 105 P.L. 314, 202. Second, under the original 1996 law possession of fewer than three images of child pornography was legal regardless of whether one continued to retain those images; thus the law did not take a "zero tolerance" approach as to individuals who possessed only one or two images of child pornography. By contrast, under the 1998 amendment, Congress relegated possession of fewer than three images of child pornography to being an affirmative defense to—rather than an element of—the crime, and required that defendants be able to qualify for the defense only by meeting certain additional requirements (*e.g.,* turning over to law enforcement and/or destroying the images). In this sense, Congress adopted a "zero tolerance" approach to possession of child pornography. Congress's "toughened" stance on child pornography in 1998 did not necessarily include an authorization of multiple and separate punishments for receipt and possession of child pornography for the same conduct.

**[6]** Though the dissent's construction of Congress's intent might be plausible, it cannot be said that Congress "clearly" intended it, especially in light of alternate, plausible interpretations. *Hunter* did not suggest that the *Blockburger* analysis be dispensed with; it held only that the presumption against multiple punishment arising from a *Blockburger* analysis could be overcome by a clear expression of legislative intent to the contrary. *Hunter*, 459 U.S. at 367. Such a clear expression is absent here, and so the controlling analysis remains that of *Blockburger* to ascertain whether Congress intended multiple punishments. *See Rutledge*, 517 U.S. at 304 n.14.

Even if the matter were "not entirely free from doubt, the doubt must be resolved in favor of lenity." *See Whalen v. United States*, 445 U.S. 684, 694 (1980); *see also Albernaz*, 450 U.S. at 342 ("Th[e] policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended. We emphasize[ ] that the 'touchstone' of the rule of lenity is statutory ambiguity." (citation and quotations omitted)). If Congress desires to authorize multiple and separate punishments for receipt and possession for the same child pornography conduct, it is of course free to do so. However, until it does, we should not exceed the clearly-expressed legislative authorization.

**[7]** Having rejected the government's argument that possession of child pornography requires proof of an element that receipt does not, we conclude that, under the *Blockburger* test, the offense of possessing child pornography is a lesser included offense of the receipt of child pornography. Furthermore, given that Congress has not clearly indicated its intent to the contrary, the district court erred when it imposed a second and constitutionally impermissible conviction on Davenport for the same conduct, in violation of the Fifth Amendment's Double Jeopardy Clause. *See Hunter*, 459 U.S. at 366. The fact that the terms of the two sentences run concurrently does not alter our conclusion. *See Ball*, 470 U.S. at 864-65 (discussing potential adverse collateral consequences of sentences violating double jeopardy, even if concurrent, and concluding that "[t]he second conviction, even if it results in no greater sentence, is an impermissible punishment.").[5]

---

[5]Davenport also suggests that his sentence for both possession and receipt of child pornography presents a problem under *United States v. Booker*, 543 U.S. 220 (2005), which requires that we analyze a sentence for "reasonableness." *See United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006). We need not reach this argument because of our conclusion that Davenport's sentence is constitutionally infirm because of double jeopardy.

**[8]** The district court's error was plain, and it affected Davenport's substantial rights by imposing on him the potential collateral consequences of an additional conviction. Finally, because the prohibition against double jeopardy is a cornerstone of our system of constitutional criminal procedure, this error threatens the fairness, integrity, and public reputation of our judicial proceedings. We therefore exercise our discretion under *Olano* to correct it.

**[9]** We vacate the judgment and remand with instructions that the district court vacate Davenport's conviction on one of the two counts, allowing for it to be reinstated without prejudice if his other conviction should be overturned on direct or collateral review.

**VACATED AND REMANDED.**

---

GRABER, Circuit Judge, dissenting:

I respectfully dissent because, in my view, Congress clearly intended to authorize cumulative punishment for receipt of child pornography and possession of child pornography.

I disagree with the majority for two independent reasons. First, the majority creates a circuit split by announcing a new interpretation of the test first applied in *Blockburger v. United States*, 284 U.S. 299 (1932). Second, the majority ignores Congress' clear intent to authorize cumulative punishment for the crimes of receipt and possession.

A.   *The Blockburger Test and Affirmative Defenses*

The majority's formalistic application of the *Blockburger* test looks only at the *elements* of each crime. In my view, we need not turn a blind eye to all *affirmative defenses* that do not negate an element of the crime. I would join the only circuits

to have addressed the issue and hold that affirmative defenses *are* part of the analysis. *United States v. Franchi-Forlando*, 838 F.2d 585, 591 (1st Cir. 1988); *United States v. Ortiz-Alarcon*, 917 F.2d 651, 653 (1st Cir. 1990) (following *Franchi-Forlando*); *United States v. Gomez-Ruiz*, 931 F.2d 977, 979-80 (1st Cir. 1991) (same); *United States v. Ahad*, 985 F.2d 554, 1993 WL 27384, *1 (4th Cir. 1993) (per curiam) (unpublished disposition)[1] (expressly adopting the reasoning and holding of *Franchi-Forlando*); *see also United States v. Verduzco*, 373 F.3d 1022, 1028 (9th Cir. 2004) (rejecting, in a different context, the argument that the term "element" should not encompass an affirmative defense as a "formalistic reading" of the term "element").

Suppose these facts: John Doe ordered and received two images of child pornography. He immediately regretted his curiosity; an hour later, he shredded one image and took the other to the nearest police station. Under the present version of the statutes, John Doe is guilty of receiving child pornography, notwithstanding the small number of images and the buyer's remorse, but he is not guilty of possessing child pornography.

As I read *Blockburger*, we simply examine the text of the statutory provisions to see whether the crime of possession requires proof of a fact that the crime of receipt does not. The crime of possession requires proof that the defendant possessed three or more images or failed to delete the images or inform the police about them. Receipt does not require proof of any of those facts. Thus, the crime of possession requires proof of a fact that the crime of receipt does not. That's all there is to it.[2]

---

[1] Unpublished dispositions of the Fourth Circuit may be cited for their persuasive value, regardless of the date of publication. 4th Cir. R. 32.1.0.

[2] In practice, the government must take account of the affirmative defense. If a prosecutor knew for certain that the affirmative defense applies (as in my John Doe hypothetical), the government could not ethically charge John Doe with the crime of possession.

## B. *Congressional Intent*

In determining whether the Double Jeopardy Clause permits punishment for two separate crimes, the " 'dispositive question' [is] whether Congress intended to authorize separate punishments for the two crimes." *Albernaz v. United States*, 450 U.S. 333, 344 (1981) (quoting *Whalen v. United States*, 445 U.S. 684, 689 (1980)). The *Blockburger* test is only one indicator of congressional intent and "is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett v. United States*, 471 U.S. 773, 779 (1985); *see also Missouri v. Hunter*, 459 U.S. 359, 368 (1983) ("[S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes."). In my view, Congress clearly intended to authorize cumulative punishment for the crimes of receipt and possession. Accordingly, even if I agreed with the majority's formalistic application of the *Blockburger* test, I would nevertheless conclude that cumulative punishment is authorized.

### 1. *Legislative History of 18 U.S.C. § 2252A*

In 1996, Congress enacted 18 U.S.C. § 2252A to criminalize activities related to child pornography, including the separate crimes of receipt of child pornography and possession of child pornography. "Any person who . . . knowingly receives . . . any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce" commits the crime of receipt. 18 U.S.C. § 2252A(a)(2) (1996). "Any person who . . . knowingly possesses any . . . material that contains 3 or more images of child pornography" commits the separate crime of possession. 18 U.S.C. § 2252A(a)(5)(B) (1996).

Supporting the enactment of the statute, Congress made findings about the harms that flow from child pornography.

Pub. L. No. 104-208, 110 Stat. 3009-26 (1996). At least two distinct harms were identified.

First, Congress recognized the harm to the actual children who are used in creating child pornography:

> (1) the use of children in the production of sexually explicit material, including photographs, films, videos, computer images, and other visual depictions, is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved;

> (2) where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years[.]

*Id.* The creation of child pornography results from the market for such images. Of note, a person who *receives* images (for instance, by ordering a magazine or subscribing to an online website) furthers the market for such images *whether or not* the person retains them. Indeed, even a person who receives the images and never gets around to viewing them still causes these harms that Congress noted.

Second, and separately, Congress identified the harmful uses of child pornography in the hands of pedophiles and sexual abusers:

> (3) child pornography is often used as part of a method of seducing other children into sexual activity; a child who is reluctant to engage in sexual activity with an adult, or to pose for sexually explicit photographs, can sometimes be convinced by viewing depictions of other children "having fun" participating in such activity;

(4) child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children; such use of child pornography can desensitize the viewer to the pathology of sexual abuse or exploitation of children, so that it can become acceptable to and even preferred by the viewer[.]

*Id.* Production or receipt of child pornography does not per se cause these harms. Rather, a person's *possession* and use of the images causes these harms.

Congress amended the statute two years later. Its express purpose was to get tougher on persons who possessed child pornography. *See* 144 Cong. Rec. S12262-65 (1998) (explaining that the "Protection of Children From Sexual Predators Act of 1998" was an effort to take a "zero tolerance" approach to possession of child pornography). Congress effectuated that purpose by criminalizing the possession of *any* number of images (not just "3 or more"). 18 U.S.C. § 2252A(a)(5). At the same time, it passed an affirmative defense for persons who possessed less than three images and promptly destroyed the images or contacted law enforcement. 18 U.S.C. § 2252A(d).[3]

---

[3]That provision reads:

It shall be an affirmative defense . . . that the defendant—

(1)  possessed less than three images of child pornography; and

(2)  promptly and in good faith, and without retaining or allowing any person, other than a law enforcement agency, to access any image or copy thereof—

(A)  took reasonable steps to destroy each such image; or

(B)  reported the matter to a law enforcement agency and afforded that agency access to each such image.

18 U.S.C. § 2252A(d).

2. *Analysis*

To find congressional intent, we are to consider whether the two statutory provisions are "directed to separate evils" or address "diverse societal harms." *Ball v. United States*, 470 U.S. 856, 864 (1985); *Albernaz*, 450 U.S. at 343; *see also Garrett*, 471 U.S. at 781. Plainly that is so here. Congress explicitly found that child pornography causes many harms. Some of those harms are caused by receipt but not by possession, and others are caused by possession but not by receipt.

To find congressional intent, we are also to consider the statute's history. *Albernaz*, 450 U.S. at 342-43. When Congress enacted the original version of 18 U.S.C. § 2252A (1996), there is no question that Congress plainly authorized cumulative punishment for possession and receipt, even under the majority's strict interpretation of the *Blockburger* test.[4] When Congress amended the statute two years later, its express purpose was to get *tougher* on the crime of possession. The amendment got tougher by creating a "default" that proving possession of forbidden images presumes possession of three or more and by adding that even a very small number, by itself, does not relieve a defendant of criminal liability. Surely Congress did not intend, at the same time, to *reduce* criminal penalties for a typical offender, that is, someone who receives and possesses three or more images of child pornography.

The Supreme Court's conclusion in *Albernaz* regarding certain drug offenses applies with equal force to the statutory provisions that we consider today:

---

[4]In the original version of the statute, the crimes of possession and receipt had *differing elements*. Receipt contained an element requiring proof of interstate or foreign shipment but possession did not. Possession contained an element requiring proof of 3 or more images but receipt did not. The majority therefore does not dispute that the original version of the statute authorized cumulative punishment.

The conclusion [I] reach today regarding the intent of Congress is reinforced by the fact that the two [child pornography] statutes are directed to separate evils presented by [the child pornography market]. [Receipt and possession of child pornography] impose diverse societal harms, and . . . Congress has in effect determined that [receiving and possessing child pornography] is twice as serious as . . . do[ing] either object singly. This result is not surprising for . . . the history of the [child pornography] legislation in this country reveals the determination of Congress to turn the screw of the criminal machinery— detection, prosecution, and punishment—tighter and tighter.

450 U.S. at 343 (citation and internal quotation marks omitted).

I do not agree with the majority that Congress' intent is unclear. Op. at 2668-69. The majority does not dispute any of the following facts: Congress plainly authorized cumulative punishments when it enacted the law in 1996, even under the majority's test; the statutory provisions are directed toward different harms; two years later, Congress amended the statute to "get tougher" on child pornography crimes; and nothing in the legislative history suggests that Congress intended to remove cumulative punishment. Short of an express provision for cumulative punishment, it is hard to imagine a clearer indication of Congress' intent.

Indeed, the majority implies that an express provision is required, op. at 2670, but the Supreme Court has squarely rejected that view. In *Garrett*, 471 U.S. at 778-86, the two statutory provisions at issue covered the "same conduct" under the *Blockburger* test, and neither the statute nor the legislative history contained an express provision authorizing cumulative punishment. Nevertheless, the Court held that Congress' intent to authorize cumulative punishment was

plain from the legislative history and other indicators. *Id.* The Supreme Court warned that the *Blockburger* rule is "not controlling," because to hold otherwise would "convert[ ] what is essentially a factual inquiry as to legislative intent into a conclusive presumption of law." *Id.* at 779. The majority's analysis in this case falls prey to that temptation: the majority improperly views "the application of the *Blockburger* rule as a conclusive determinant of legislative intent, rather than as a useful canon of statutory construction." *Id.*

The majority loses sight of why the *Blockburger* test is a relevant indicator of Congress' intent. As the Supreme Court has explained, it is " 'assumed . . . that Congress was aware of the *Blockburger* rule and legislated with it in mind.' " *Albernaz*, 450 U.S. at 341-42. To reach the majority's conclusion, one must also assume that Congress knew that the *Blockburger* test excluded consideration of affirmative defenses. The problem with that assumption is that the only circuits to have weighed in on the issue had held *the exact opposite*. *See* cases cited above, in Part A. In effect, the majority today creates a new interpretation of the *Blockburger* test, contrary to existing interpretations, and then assumes that, in 1998, Congress legislated with the majority's novel interpretation in mind. I cannot concur in that strained method of determining congressional intent.

In summary, Congress clearly intended to permit cumulative punishment for *receipt* of child pornography and *possession* of child pornography. Accordingly, I would hold that punishing Defendant for both receipt and possession does not violate the Double Jeopardy Clause. His convictions and sentence should be affirmed in full.