Filed 1/27/23 P. v. Parr CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BRETT MICHAEL PARR,<br><br>Defendant and Appellant. | F082377<br><br>(Super. Ct. No. F18908464)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. David Gottlieb, Judge.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christopher J. Rench, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted Brett Michael Parr (appellant) of felony driving with a blood-alcohol content of 0.08 percent or more (Veh. Code, § 23152, subd. (b); count 1)[1] and felony driving under the influence of alcohol (§ 23152, subd. (a); count 2).[2] The trial court sentenced appellant to two years in state prison on both counts but stayed sentence on count 2 pursuant to Penal Code section 654.

On appeal, appellant contends his roadside statements to law enforcement were obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) and were involuntary. He also alleges instructional error, and that one of his two convictions must be dismissed pursuant to Penal Code section 954 as different statements of the same offense. We find no error, and we affirm.

## BACKGROUND

On October 8, 2018, around 8:00 p.m., a witness was driving on a freeway when she saw a truck in front of her swerving between lanes. The witness followed the truck as it exited the freeway onto a loop-shaped off-ramp. The truck did not slow down as the road began to turn. It went off the road and over the side of an embankment, rolling until it came to rest on the driver's side.

The witness immediately pulled over and ran to the truck. She looked inside of the truck and only saw appellant. She asked appellant if anyone else was in the truck, and he said no. She looked around to see if anyone had been ejected from the truck but did not see or hear anyone. She helped pull appellant out of the truck through the passenger's side door. As she did so, she noticed he smelled of alcohol. She walked with

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

[2] The driving under the influence charges were elevated to felonies pursuant to section 23550.5 based on appellant's prior felony section 23153 conviction.

appellant up the embankment to the off-ramp and waited with him for a few minutes until police arrived.

Officer Matthew Olsen of the California Highway Patrol was dispatched to the accident. Appellant, the witness, and paramedics were on scene when he arrived. After the paramedics finished talking to appellant, Olsen began asking him questions about the accident. Olsen noticed the strong odor of alcohol emanating from appellant's breath and person, and observed he was "lethargic" and "sluggish."

Appellant told Olsen the accident occurred because he did not slow down enough when he tried to take the off-ramp. He claimed he was driving from his father's house, where he had consumed five or six beers. Appellant repeated several times he was the driver and the only person inside of the truck, and Olsen observed he was in possession of the keys. While speaking about the accident, appellant provided several inaccurate details, including the freeway exit he thought he was taking and the direction he thought he was traveling.

Olsen administered three field sobriety tests, which appellant was unable to perform correctly. Olsen offered to let appellant take a preliminary alcohol screening breath test, but he refused. Olsen then placed appellant under arrest for driving under the influence of alcohol. Appellant was transported to a hospital where a sample of his blood was drawn at 9:20 p.m.

A criminalist tested appellant's blood sample, which revealed appellant's blood-alcohol content was 0.27 percent. The criminalist opined that all individuals are too impaired to safely drive a motor vehicle at a 0.08 percent or higher blood-alcohol content. He estimated that for appellant to reach a blood-alcohol content of 0.27 percent, he would have had to have consumed at least 11 beers within the previous three hours.

Appellant's sole witness at trial was his father, Michael Parr.[3] Michael testified that on the night of the accident, appellant and a co-worker named Jojo came to his house around 6:00 p.m. or 7:00 p.m. to help him move some furniture. Appellant and Jojo arrived in a truck that Michael believed belonged to appellant's employer. Appellant and Jojo were both extremely intoxicated when they arrived. Michael did not see them drink anything at his house. They stayed for about 30 minutes, then Michael walked them out to the truck. When they left, Jojo was driving the truck, and appellant was in the passenger's seat.

## DISCUSSION

I. **Appellant's Roadside Statements to Law Enforcement Were not Taken in Violation of *Miranda* and were Voluntary. Any Presumed Error was Harmless.**

Appellant contends his roadside statements to Olsen were admitted in violation of his Fifth Amendment right against self-incrimination as set forth in *Miranda* and its progeny. Specifically, he argues he was in custody for purposes of *Miranda* and therefore was subjected to custodial interrogation without having received *Miranda* advisements. He also raises the related claim that he was so intoxicated and disoriented that his statements were involuntary. He seeks reversal under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*), claiming the trial court's ruling was prejudicial.

A. *Background.*

Prior to trial, appellant filed a motion in limine "to exclude any statement made by [appellant] to police officers in this case under *Miranda*." The trial court held a hearing pursuant to Evidence Code section 402.

Olsen was the sole witness at the hearing. His testimony was consistent with his later trial testimony. He testified that when he arrived at the accident scene, he was

---

**3** To avoid confusion, we refer to Michael Parr by his first name. No disrespect is intended.

4.

wearing a standard California Highway Patrol uniform and driving a marked patrol car. Two other officers were present at the scene, but Olsen was the only officer who spoke with appellant.

Olsen began by asking appellant open-ended questions about the accident followed by more specific clarifying questions. During the questioning, appellant gave answers suggesting he was confused or disoriented. He believed he was taking an off-ramp several miles east of where the accident occurred. He also stated he was traveling to a town located to the east but had been driving westbound on the freeway immediately prior to the accident.

Olsen testified he did not give appellant any commands to move to a specific place or tell him he was not free to leave. However, at some point during their conversation, he told appellant, "Hey, let's walk over here," and they moved to a different part of the roadway to avoid oncoming traffic. Olsen also acknowledged that once he observed appellant appeared to be under the influence of alcohol, he subjectively concluded appellant was not free to leave, but never verbally expressed that to appellant. Olsen used his flashlight during his interaction with appellant because it was dark, but appellant was never placed in handcuffs, and neither Olsen nor any other officer on scene ever drew their firearms. Olsen's entire interaction with appellant lasted approximately 25 minutes. Olsen never advised appellant of his *Miranda* rights.

The trial court denied the *Miranda* motion, ruling appellant was not in custody for purposes of *Miranda*. The court reasoned appellant's freedom of movement was not curtailed, the interaction between appellant and Olsen was relatively short in duration, and there was nothing inherently coercive about the location of the interview or the conduct of the officers.

After the trial court ruled appellant's statements were admissible under *Miranda*, appellant argued his statements should be excluded as involuntary. His counsel conceded there was no "coercion or [malintent] by the officer," but argued appellant's intoxication,

5.

disoriented state, and recent involvement in a major motor vehicle accident show his statements were not voluntarily made. The trial court rejected the argument and found the statements were voluntary, reasoning that while appellant appeared confused about certain details, he was not incoherent, and his answers were comprehensible.

### B.     *Miranda was inapplicable to appellant's roadside statements because he was not in custody.*

*Miranda* applies only to " 'custodial interrogation,' " which is " 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " (*California v. Beheler* (1983) 463 U.S. 1121, 1123.) "Absent 'custodial interrogation,' *Miranda* simply does not come into play." (*People v. Mickey* (1991) 54 Cal.3d 612, 648.)

In determining whether a person was "in custody" for purposes of *Miranda*, a court must consider all of the "objective circumstances of the interrogation." (*Stansbury v. California* (1994) 511 U.S. 318, 322–323.) Relevant factors include the location and duration of questioning, whether the person voluntarily agreed to the interview, the tone and type of questioning, whether restrictions were placed on the person's freedom of movement during the interview, the presence or absence of physical restraints, and the number of officers who participated. (*Howes v. Fields* (2012) 565 U.S. 499, 509; *People v. Aguilera* (1996) 51 Cal.App.4th 1151, 1162.) No one factor is dispositive. (*People v. Aguilera*, *supra*, 51 Cal.App.4th at p. 1162.) Rather, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (*California v. Beheler*, *supra*, 463 U.S. at p. 1125.) On appeal, we independently review the uncontradicted facts to determine whether the trial court rendered a proper legal conclusion. (*People v. Stansbury* (1995) 9 Cal.4th 824, 831; *People v. Waidla* (2000) 22 Cal.4th 690, 730.)

We conclude the evidence conclusively established appellant was not in custody for purposes of *Miranda* while being questioned by Olsen. The United States Supreme

6.

Court addressed an almost identical factual scenario in *Berkemer v. McCarty* (1984) 468 U.S. 420 (*Berkemer*). There, an officer stopped the defendant after observing his vehicle weaving on a highway. (*Berkemer*, *supra*, 468 U.S. at p. 423.) The officer determined the defendant was intoxicated but did not tell him he would be arrested and taken into custody. (*Ibid*.) Instead, he asked the defendant to perform a field sobriety test, which he failed. (*Ibid.*) The officer asked the defendant whether he had been using drugs or alcohol, and the defendant replied he had consumed two beers and smoked marijuana. (*Ibid*.) The officer then formally placed the defendant under arrest and transported him to jail. (*Ibid.*)

The Supreme Court held the interaction between the officer and the defendant could not be characterized as the functional equivalent of formal arrest and concluded the defendant was not in custody for purposes of *Miranda* until the officer actually placed him under arrest. (*Berkemer*, *supra*, 468 U.S. at p. 442.) The court observed the time between the stop and arrest was short. (*Id.* at pp. 441–442.) During that interaction, a single police officer asked the defendant "a modest number of questions and requested him to perform a simple balancing test at a location visible to passing motorists." (*Id.* at p. 442.) The officer never communicated his intent to arrest the defendant or told him his detention would be more than temporary. (*Id.* at pp. 441–442.) Therefore, the court concluded the defendant's statements made before his arrest were admissible against him, because prior to his arrest he was not subjected to restraints comparable to a formal arrest. (*Ibid.*)

Here, as in *Berkemer*, appellant was questioned by a single officer on the side of a highway. The questioning was not hostile, accusatory, or lengthy, and occurred in a public place. Officers placed no restrictions on appellant's freedom of movement and never told him he was not free to leave, placed him into handcuffs, or drew their firearms. Although Olsen decided appellant was not free to leave when he realized that appellant was intoxicated, he never communicated that restriction to appellant. As *Berkemer*

7.

explained, "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." (*Berkemer*, *supra*, 468 U.S. at p. 442.)

Thus, given the totality of the circumstances, it is clear appellant was not subjected to a level of restraint consistent with a formal arrest. (*California v. Beheler*, *supra*, 463 U.S. at p. 1125.)

Appellant's reliance on *People v. Bejasa* (2012) 205 Cal.App.4th 26 (*Bejasa*) is unavailing. In *Bejasa,* the defendant was driving a vehicle and caused a head-on collision with another vehicle. (*Id.* at p. 32.) He admitted to responding officers he was on parole, and the officers searched his person and recovered drugs and a syringe. (*Id.* at pp. 32–33.) The officers then handcuffed the defendant, placed him in the back of a patrol car, and told him he was being detained for a possible parole violation. (*Id.* at p. 33.) A traffic officer arrived a short time later, allowed the defendant to get out of the patrol car and removed the handcuffs. (*Ibid.*) In response to the traffic officer's questioning, appellant made incriminating statements about his drug use. (*Ibid.*) On appeal, the court held appellant's statements made after he was released from the patrol car were inadmissible because he did not receive *Miranda* advisements. (*Bejasa*, at pp. 36–37.) In concluding the defendant was in custody for purposes of *Miranda*, it reasoned the defendant was told he was being detained, and "was confronted with two of the most unmistakable indicia of arrest: he was handcuffed and placed in the back of a police car." (*Bejasa*, at p. 37.)

Unlike *Bejasa*, appellant's freedom of movement was not restricted. He was never handcuffed or placed in the back of a patrol car. He was not told he was not free to leave until he was formally placed under arrest. Accordingly, the record conclusively demonstrates appellant was not in custody for purposes of *Miranda* during the roadside questioning by Olsen, and therefore his *Miranda* claim lacks merit.

### C. *Appellant's roadside statements were voluntary.*

A statement is involuntary if it is not the product of " 'a rational intellect and a free will.' " (*Mincey v. Arizona* (1978) 437 U.S. 385, 398.) Statements that are the product of " 'coercive police conduct' " are involuntary and subject to exclusion under the Fifth and Fourteenth Amendments. (*People v. Caro* (2019) 7 Cal.5th 463, 492 (*Caro*).) We evaluate voluntariness "by looking to the totality of the circumstances to determine 'whether the defendant's " 'will has been overborne and his capacity for self-determination critically impaired' " by coercion.' [Citation.] The presence of police coercion is a necessary, but not always sufficient, element. [Citation.] We also consider other factors, such as the location of the interrogation, the interrogation's continuity, as well as the defendant's maturity, education, physical condition, and mental health." (*Ibid.*) On appeal, we review a trial court's voluntariness determination "independently in light of the record in its entirety, including 'all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.' " (*People v. Benson* (1990) 52 Cal.3d 754, 779.)

We conclude the trial court properly ruled appellant's roadside statements were voluntary. Olsen asked appellant straightforward questions aimed at gathering information about a vehicle accident. He made no threats, promises, or inducements, nor engaged in other coercive conduct aimed at eliciting a confession. Although appellant was significantly intoxicated, his responses neither demonstrated nor reasonably suggested he was incoherent or otherwise answering involuntarily. Rather, the record establishes he "understood the questions asked and answered responsively," and that he "freely and deliberately [chose] to speak with" Olsen. (*People v. Hensley* (2014) 59 Cal.4th 788, 814.)

Appellant cites *Caro* and *Mincey* in support of his voluntariness claim. However, both cases deal with the interviews of suspects hospitalized and in significant pain. (*Caro*, *supra*, 7 Cal.5th at p. 493; *Mincey v. Arizona*, *supra*, 437 U.S. at pp. 398–400.)

No such circumstances were present here. Appellant was involved in a significant motor vehicle accident, but he had no visible injuries and did not receive any significant medical treatment on scene. There is nothing in the record to suggest his "statements were not 'the product of his free and rational choice.' " (*Mincey v. Arizona, supra*, 437 U.S. at p. 401.) Therefore, the trial court did not err in concluding appellant's roadside statements were voluntary.

### D.  *Any presumed error was harmless beyond a reasonable doubt.*

Even if appellant's statements should have been excluded as violative of *Miranda* or involuntary, any error would be harmless. *Miranda* error, and the failure to exclude a statement as involuntary, are both subject to the harmless beyond a reasonable doubt standard propounded in *Chapman*. (*Caro, supra*, 7 Cal.5th at p. 493; *People v. Saldana* (2018) 19 Cal.App.5th 432, 463.) Under this standard, which applies to errors of constitutional dimension, reversal is required unless the reviewing court can conclude beyond a reasonable doubt that the error did not contribute to the verdict. (*Chapman, supra*, 386 U.S. at p. 24.) "To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous." (*Yates v. Evatt* (1991) 500 U.S. 391, 403, disapproved on other grounds in *Estelle v. McGuire* (1991) 502 U.S. 62, 72–73, fn. 4.) Rather, an error did not contribute to the verdict when the record reveals the error was unimportant in relation to everything else the jury considered on the issue in question. (*Ibid.*) "The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279, italics omitted.)

Considering the overwhelming evidence of guilt, any presumed error was harmless. Testing revealed appellant's blood-alcohol content was 0.27 percent. He

10.

smelled of alcohol and appeared lethargic. His poor driving, including swerving between lanes and driving off the side of a freeway exit reflects that level of intoxication.

Appellant contends the admission of his statements to Olsen that he was driving the truck during the accident was prejudicial because it undermined his defense that he was not driving. However, these statements were insignificant to the verdict in light of all the other evidence establishing appellant was the driver of the truck. An unbiased witness observed the accident and never left the scene. She testified appellant was the only person in or near the truck, and appellant told her no one else was inside. When law enforcement arrived, he was still in possession of the truck keys. Given this overwhelming evidence appellant was the driver, his roadside statements were clearly unimportant to the jury's determination of guilt. (*Yates v. Evatt*, *supra*, 500 U.S. at p. 403.) Accordingly, any presumed error was harmless.

## II. The Trial Court Did Not Err in Instructing the Jury it May Consider Appellant's False Statements as Evidence of Consciousness of Guilt. Any Presumed Error was Harmless.

Appellant contends the instruction that the jury may consider a defendant's false statements as evidence of consciousness of guilt (CALCRIM No. 362) was not supported by substantial evidence. He argues the instruction was prejudicial because it made the jury less likely to believe his defense that he was not driving the truck at the time of the accident.

### A. Background.

At the jury instruction conference, the People requested the trial court give CALCRIM No. 362, which states that the jury may consider a defendant's false statements before trial as evidence of consciousness of guilt. The trial court agreed, concluding the instruction was appropriate based on appellant's statement to Olsen that he drank "five or six beers." The trial court explained that a reasonable argument could

11.

be made that appellant made this statement with the intent to mislead Olsen as to his level of intoxication.

### B.  Standard of review.

A trial court is obligated to instruct a jury on the general principles of law that are raised by the evidence. (*People v. Diaz* (2015) 60 Cal.4th 1176, 1189.) Substantial evidence must exist for a trial court to provide a particular jury instruction. (*People v. Cole* (2004) 33 Cal.4th 1158, 1206.) In this context, substantial evidence "would allow a reasonable jury to make a determination in accordance with the theory presented under the proper standard of proof." (*Ibid.*) In other words, "Substantial evidence is evidence sufficient to 'deserve consideration by the jury.' " (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.) We review a claim of instructional error de novo. (*People v. Cole*, *supra*, 33 Cal.4th at p. 1210.)

### C.  The consciousness of guilt instruction was supported by substantial evidence.

"A trial court properly gives consciousness of guilt instructions where there is some evidence in the record that, if believed by the jury, would sufficiently support the inference suggested in the instructions." (*People v. Bowman* (2011) 202 Cal.App.4th 353, 366.) Here, appellant's statement that he drank "five or six beers" is contradicted by the criminalist's testimony that to reach a blood-alcohol content of 0.27 percent, appellant would have had to have consumed at least 11 beers. Thus, the jury could have reasonably concluded appellant intentionally made a false statement about the amount of alcohol he consumed prior to driving to downplay his level of intoxication. While appellant contends his statement was the product of his confusion following the accident rather than a lie, whether an opposing inference can be drawn from the statement is a question for the jury and is not relevant to our substantial evidence inquiry on appeal.

Appellant also argues that attempting to mislead Olsen regarding his level of intoxication would be nonsensical given that his defense at trial was that he was not the

driver of the truck. However, the strategy his counsel elected to adopt at trial is not relevant to his state of mind at the time he made the statement. Regardless, the fact that he falsely attempted to minimize his level of intoxication immediately after the accident is highly relevant to his defense, because it suggests he lied to officers about his level of intoxication because he was the driver. In other words, if appellant was not the driver of the truck, he would have had no reason to lie to Olsen about how much alcohol he had consumed. Therefore, we conclude the instruction was supported by substantial evidence, and appellant's claim lacks merit.

### D. *Any Presumed Error was Harmless.*

Even assuming the trial court erred in giving CALCRIM No. 362, we would not find the error prejudicial. The parties agree, as do we, that the alleged instructional error is subject to the standard of review set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (See *People v. Guiton* (1993) 4 Cal.4th 1116, 1129–1130.) Under the *Watson* standard, which applies to errors of state law, reversal is not required unless it is reasonably probable the defendant would have obtained a more favorable result had the error not occurred. (*Watson*, *supra*, 46 Cal.2d at p. 836.)

CALCRIM No. 362 does not direct the jury to draw an adverse inference against the defendant. (See *People v. San Nicolas* (2004) 34 Cal.4th 614, 666.) It merely instructs the jury that if it finds the defendant made a false or misleading statement, it is up to them "to decide its meaning and importance." (CALCRIM No. 362.) Thus, if CALCRIM No. 362 was not supported by substantial evidence, it was at worst irrelevant or inapplicable, and the prejudicial effect was minimal. (See *People v. Cross* (2008) 45 Cal.4th 58, 67 ["[G]iving an irrelevant or inapplicable instruction is generally ' "only a technical error which does not constitute ground for reversal." ' "].)

As we explained above, the evidence of appellant's guilt was overwhelming. Considering the nature of the alleged error in light of the overwhelming evidence, there is

no basis to conclude the trial court giving CALCRIM No. 362 had any outcome on the verdict. Therefore, we conclude any presumed error was harmless.

## III. Section 23152, Subdivisions (a) and (b) are not Different Statements of the Same Offense.

Appellant contends his convictions for section 23152, subdivision (b) (count 1) and section 23152, subdivision (a) (count 2) are different statements of the same offense, and therefore one of the two convictions must be reversed. We disagree.

Penal Code section 954 " 'authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.' " (*People v. Vidana* (2016) 1 Cal.5th 632, 650 (*Vidana*).) Whether two statutes or statutory provisions describe the same offense within the meaning of Penal Code section 954 " 'turns on the Legislature's intent in enacting [the] provisions, and if the Legislature meant to define only one offense, we may not turn it into two.' " (*People v. Grabham* (2021) 68 Cal.App.5th 549, 554 (*Grabham*), quoting *People v. Gonzalez* (2014) 60 Cal.4th 533, 537.)

In *Grabham*, the First Appellate District, Division Four, rejected the exact claim appellant raises here, concluding section 23152, subdivisions (a) and (b) are separate offenses. (*Grabham*, *supra*, 68 Cal.App.5th at p. 551.) *Grabham* first looked to the "statutory structure and related portions of the Vehicle Code," which it found demonstrates "a clear legislative intent to treat subdivisions (a) and (b) of section 23152 as separate offenses." (*Id.* at p. 558.) It observed that each offense can be committed without committing the other, as section 23152, subdivision (a) criminalizes driving under the influence of alcohol, while section 23152, subdivision (b) criminalizes driving with a blood-alcohol content of 0.08 percent or greater. (*Grabham*, at p. 558.) It also noted that section 23610 creates a rebuttable presumption that a defendant with a blood-alcohol content of 0.08 percent or greater is under the influence of alcohol for purposes of

14.

section 23152, subdivision (a). *Grabham* reasoned the defendant's argument "that a violation of section 23152 [, subdivision] (b) necessarily establishes a violation of section 23152 [, subdivision] (a), defendant would effectively have us 'convert[ ] a rebuttable presumption into a conclusive one' [citation], in violation of the plain language of section 23610." (*Grabham*, at p. 558.)

*Grabham* then turned to the legislative history of section 23152, subdivision (b), which was enacted after section 23152, subdivision (a). (*Grabham*, *supra*, 68 Cal.App.5th at p. 559.) It found the Legislature enacted section 23152, subdivision (b) to address the difficulties posed in prosecuting a defendant under section 23152, subdivision (a) alone, which "permitted a defendant to escape conviction by raising a doubt as to his intoxication ' "no matter what his blood-alcohol level." ' " (*Grabham*, at p. 559.) *Grabham* concluded this "demonstrates the legislative intent to 'create a new crime,' in addition to and independent of the crime of driving under the influence set forth in section 23152 [, subdivision] (a)." (*Ibid.*)

Appellant contends *Grabham* was wrongly decided. He argues it does not comport with *Vidana*, where our high court held that larceny under Penal Code section 484, subdivision (a), and embezzlement under Penal Code section 503, are different statements of the same offense. (*Vidana*, *supra*, 1 Cal.5th at pp. 647–648.) However, *Grabham* explained that *Vidana* is distinguishable because "the Legislature expressly stated its intent in legislative history to *combine* the preexisting offenses of larceny and embezzlement into one crime of theft, whereas it *added* section 23152 [, subdivision] (b) to the drunk driving scheme." (*Grabham*, *supra*, 68 Cal.App.5th at p. 561.) *Grabham* also reasoned that unlike larceny and embezzlement, which are different theories of liability, section 23152, subdivision (b) is a " 'new and separate offense' that has different elements and that requires different (and lesser) evidence to sustain a conviction than section 23152 [, subdivision] (a)." (*Grabham*, at p. 561.)

We agree with *Grabham* that the statutory structure and legislative history of section 23152, subdivisions (a) and (b) demonstrate the Legislature's clear intent to create more than one offense. (*People v. Gonzalez*, *supra*, 60 Cal.4th at p. 537.) We therefore conclude section 23152, subdivisions (a) and (b) are not the same offense within the meaning of Penal Code section 954.

Appellant also raises the related claim that multiple convictions for a different statement of the same offense would violate the federal constitutional prohibition against double jeopardy. We need not address this claim in detail because we have already concluded section 23152, subdivisions (a) and (b) are separate offenses. We note, however, that the double jeopardy clause is not implicated if each statutory provision " 'requires proof of a[n additional] fact which the other does not.' " (*United States v. Davenport* (9th Cir. 2008) 519 F.3d 940, 943, quoting *Blockburger v. United States* (1932) 284 U.S. 299, 304.) Here, section 23152, subdivisions (a) and (b) plainly require proof of different elements, and therefore the double jeopardy clause is inapplicable.

## DISPOSITION

The judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:


POOCHIGIAN, J.


DETJEN, J.

16.