**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JAMES E. JOHNSTON,
*Defendant-Appellant*.

No. 13-10097

D.C. No.
2:07-cr-00425-MCE-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Argued and Submitted
March 9, 2015—San Francisco California

Filed May 26, 2015

Before: M. Margaret McKeown, Mary H. Murguia,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge McKeown

# SUMMARY[*]

## Criminal Law

The panel affirmed convictions for receipt of child pornography and conspiracy to produce child pornography and to travel internationally to engage in illicit sex, but vacated the judgment and remanded with instructions that the district court vacate the defendant's conviction for possession of child pornography.

The panel reiterated that the offense of possession of child pornography is a lesser included offense of receipt of child pornography, and that under the Double Jeopardy Clause of the Fifth Amendment, it is constitutional error to enter a conviction against a defendant for both receipt and possession of child pornography for the same conduct. The panel held that in this case the record does not allow the conclusion that the convictions for receipt and possession were based on separate conduct.

The panel held that a reasonable jury could have found beyond a reasonable doubt each element of conspiracy to produce child pornography under 18 U.S.C. § 2251, and that the search of the defendant's computer did not exceed the scope of the search warrant.

The panel rejected the defendant's contention that the district court erred at sentencing by referencing facts that were stripped from the draft presentence report and by

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

admonishing him for failing to apologize for his actions, where the district court (1) clarified that the sentence was based solely on facts that were proven to the jury and undisputed sections of the presentence report and (2) explicitly recognized that remaining silent was the defendant's right.

## COUNSEL

Joseph J. Wiseman (argued), Wiseman Law Group, PC, Davis, California, for Defendant-Appellant.

Heiko P. Coppola (argued), Assistant United States Attorney; Benjamin B. Wagner, United States Attorney; Camil A. Skipper, Assistant United States Attorney and Appellate Chief, Sacramento, California, for Plaintiff-Appellee.

## OPINION

McKEOWN, Circuit Judge:

An investigation of a major child pornography website, "Illegal.cp", led federal agents to a desktop computer in James Johnston's home office. The contents of that computer were the basis of his convictions for possession and receipt of child pornography as well as conspiracy to produce child pornography and to travel internationally to engage in illicit sex.

Central to this appeal are Johnston's convictions for both receipt and possession of child pornography. Consistent with our precedent in *United States v. Davenport*, 519 F.3d 940

(9th Cir. 2008), as well as the views of a majority of the other circuits to consider the issue, we reiterate that the offense of possession of child pornography is a lesser included offense of receipt of child pornography. Under the Double Jeopardy Clause of the Fifth Amendment, it is constitutional error to enter a conviction against a defendant for both receipt and possession of child pornography for the same conduct. *See Brown v. Ohio*, 432 U.S. 161, 168–69 (1977); *Davenport*, 519 F.3d at 947–48. Johnston's conviction for possession of child pornography must be vacated. Johnston's remaining challenges do not merit reversal—sufficient evidence supports the jury's verdict; the search of his computer did not exceed the scope of the search warrant; and the district court's comments at sentencing do not constitute procedural or constitutional error.

## BACKGROUND

In February 2006, federal agents learned that James Johnston had applied for membership with a child pornography website. Later that year, agents obtained and executed a search warrant for his home and computers.

This search revealed that Johnston had stored images and videos depicting child pornography in three places. To begin, Johnston's hard drive contained 304 videos downloaded from the internet. Johnston also had received a compact disc with more than ninety explicit images. Finally, Johnston's email inbox contained a total of four emails with attached images that were duplicates of the images contained on the compact disc.

Agents searching Johnston's computer also discovered a series of sexually explicit Yahoo Instant Messenger chats

between Johnston and a user named "Switlass." In these chats, Johnston expressed a desire to obtain child pornography and travel overseas to engage in sex acts with adolescent girls.

In one exchange, Johnston requested that Switlass take pictures of nude children for him. Switlass agreed to do so if Johnston paid for her to purchase a "digicam." Johnston told Switlass "We are partners," and the same day sent her $350 via Western Union. Just a few days later, Switlass sent Johnston three emails and a CD with images of child pornography.

In another series of chats, Johnston made arrangements to meet Switlass in the Philippines. Switlass promised to arrange sexual encounters for Johnston with adolescent girls. Johnston informed Switlass that he would be in the Philippines in September 2006 and promised to bring "hundreds of dollars" for the "underage girls." He flew from San Francisco to Hong Kong on August 31, 2006 and stayed overseas until September 2007. Government agents followed Johnston for one day in Bangkok; they observed him visiting adult entertainment establishments but did not witness any improper conduct towards minors.

Johnston was arrested when he returned from Asia in September 2007. He was eventually charged with and convicted of one count of conspiracy to produce child pornography, two counts of receipt of child pornography, one count of possession of child pornography, and one count of conspiracy to travel with intent to engage in illicit sexual conduct.

The trial judge recused herself before sentencing. Judge England assumed responsibility for Johnston's case and sentenced him to a within-Guidelines sentence of 293 months' imprisonment.

## ANALYSIS

### I.  DOUBLE JEOPARDY CHALLENGE

The Double Jeopardy Clause of the Fifth Amendment provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." The Supreme Court has explained that this provision precludes dual convictions in situations where two different statutes define the "'same offense,' typically because one is a lesser included offense of the other." *Rutledge v. United States*, 517 U.S. 292, 297 (1996).

Johnston's case fits this principle "to a T." In *Davenport*, we held that the offense of possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B), is a lesser included offense of receipt of child pornography, 18 U.S.C. § 2252A(a)(2). 519 F.3d at 947. Even if the second conviction does not result in a greater sentence, imposing convictions under both statutes for the "same conduct" constitutes plain error. *Id.* at 947–48. A majority of circuits that have considered the question agree that possession of child pornography is a lesser included offense of receipt and that imposing convictions under both statutes for the same conduct violates the Double Jeopardy Clause. *See United States v. Benoit*, 713 F.3d 1, 15–16 (10th Cir. 2013); *United States v. Dudeck*, 657 F.3d 424, 430 (6th Cir. 2011); *United States v. Muhlenbruch*, 634 F.3d 987, 1003 (8th Cir. 2011); *United States v. Bobb*, 577 F.3d 1366, 1374 (11th Cir. 2009); *United States v. Miller*,

527 F.3d 54, 72 (3d Cir. 2008).  Two additional circuits have signaled their agreement with *Davenport*'s holding without explicitly deciding the issue.  *See United States v. Brown*, 701 F.3d 120, 127 (4th Cir. 2012) (stating without explanation that a defendant convicted of both receipt and possession of child pornography "has been convicted of multiplicitous offenses"); *United States v. Polouizzi*, 564 F.3d 142, 159 (2d Cir. 2009) (noting, in a case involving receipt and possession charges based on separate conduct, that "we find the reasoning of *Davenport* and *Miller* persuasive").  *But see United States v. Halliday*, 672 F.3d 462, 470 (7th Cir. 2012) (noting that "[o]ur sister circuits' holdings regarding § 2252A would cause us to question our earlier decisions" but declining to reach the question because separate images supported the defendant's convictions for possession and receipt).

In later cases we reiterated that the *Davenport* rule extends only to multiple convictions for the same criminal act.  "[W]here separate conduct supports each offense, the Fifth Amendment's Double Jeopardy Clause is not implicated."  *United States v. Overton*, 573 F.3d 679, 695 (9th Cir. 2009); *see also United States v. Schales*, 546 F.3d 965, 978 (9th Cir. 2008).   In the context of child pornography, a defendant may be convicted both of receipt of one image and possession of another image, or for receipt of an image on a hard drive and possession of the same image on a compact disc, but not for receipt and possession of the same image on the same device.  *See Schales*, 546 F.3d at 979.

To avoid offending the Double Jeopardy Clause when prosecuting a defendant both for a crime and a lesser-included offense, the government "must distinctly set forth"

the criminal activity that forms the basis of each count. *Id.* at 980. In this appeal, we ask whether the record "allow[s] us to conclude that the jury found [Johnston] guilty of separate conduct." *Id.*

The record here allows no such conclusion. Agents linked Johnston to three discrete sources of child pornography: videos on his hard drive, images on a compact disc, and images attached to emails. The indictment and the jury verdict form both state that the possession charge (count 4) is based on Johnston's possession of the hard drive and the compact disc. In a special verdict, the jury found that he possessed child pornography in both mediums.

The receipt charges, however, do not specify the medium in which Johnston received child pornography. Instead, the indictment and jury instructions on those charges simply reference the date range on which the receipt occurred. The first receipt charge (count 2) alleged that Johnston received child pornography "between on or about February 10, 2006, and on or about March 4, 2006." The second receipt charge (count 3) alleged that Johnston received child pornography "between on or about May 26, 2006, and on or about August 19, 2006."

The government acknowledges the conundrum of multiplicitous convictions through its explanation that it offered a special verdict on the possession charge in the event the jury did not convict on one of the receipt charges. But here, the government missed a step because the form does not assure us that separate conduct formed the basis of the jury's decision to convict on each count. Admittedly, based on the evidence, the date range specified in count 2 appears to limit that count to the hard drive images. Although the

government now asserts that count 3 relates only to the images attached to the emails (which in fact were essentially duplicates from the CD), the date range listed encompasses the time during which Johnston received both the CD and the emails. Therein lies the problem—there is an obvious overlap between the dates and evidence for the possession count and count 3 receipt. *See United States v. Teague*, 722 F.3d 1187, 1191–92 (9th Cir. 2013) (noting that charging documents with overlapping date ranges and mediums "create[] the possibility of multiplicitous convictions"). We are left with the inescapable result that we cannot confirm that the jury convicted Johnston of separate conduct in the possession charge.

To bridge this gap, the government argues that we should overlook its failure to specify the separate conduct underlying each conviction in the indictment and jury instructions because the prosecutor's closing argument clarified what evidence supported each count. To begin, a prosecutor's closing argument is simply that—argument—and cannot supply a missing evidentiary link. As the court appropriately instructed the jury, "what the lawyers have said in their . . . closing arguments . . . is intended to help you interpret the evidence, but it is not evidence." Even so, in this case we cannot discern anything helpful from the summation. The prosecutor repeatedly referred to the receipt and possession counts in the same breath without any indication that the jury was required to consider separate conduct for each count. Even more confusing was the mixing and matching of references to whether count 3 related to the CD or the email photographs.

It bears emphasizing that the decision of how to charge and prosecute a defendant accused of both receiving and

possessing child pornography rests entirely within the government's control.  A prosecutor may pursue both receipt and possession convictions in a child pornography case by specifying the different criminal acts that form the basis of each count.  An obvious solution up front is to consider delineating in the indictment which images relate to which count.  Alternatively, the government could submit to the jury both a receipt and a possession count based on the same conduct, but request that the court vacate or stay the possession conviction if there is a receipt conviction for duplicate conduct.  Indeed, the range of electronic media will often result in separate conduct stemming from images downloaded to a hard drive, images transferred from a hard drive to a CD, or physical prints of digitally transmitted images.  The government's options are as varied as the technology the defendant might employ, but the law requires sufficient specificity to avoid implicating the Double Jeopardy Clause.  We vacate the judgment and remand with instructions that the district court vacate Johnston's conviction for possession of child pornography.

## II.  SUFFICIENCY OF THE EVIDENCE

Johnston argues that there was insufficient evidence to support his conviction for conspiracy to produce child pornography under 18 U.S.C. § 2251.  Although Johnston advances an interpretation of the evidence that absolves him of guilt, we affirm because a reasonable jury could have found each element of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

According to chat records, Switlass—whom agents believed to be an adult prostitute located overseas—and Johnston discussed sex with young girls, money, photos, and

a possible party with Switlass and two girls. On May 25, 2006, the conversation turned to production of pictures. Johnston told Switlass that he wanted her to produce child pornography. At Switlass's request, Johnston promptly sent her $350 to purchase a "digicam" to take photographs of minor females. After that discussion, Johnston told Switlass "we are partners" and asked her to "send me one 12 year picture." Although Switlass asked for $400, Johnston in a later chat explained that $350 should be enough for a camera.

Based on the chat transcripts, the enterprise on the table on May 25 was an effort, which Johnston characterized as a partnership, to photograph underage girls. The conspiracy was born. A reasonable jury could have viewed that evidence as more than sufficient to establish that Johnston and Switlass formed a conspiracy to produce child pornography in violation of 18 U.S.C. § 2251.

Johnston attempts to escape this conclusion by pointing out that some of the photographs he received from Switlass were produced months before their chats. In Johnston's view, this timing demonstrates that Switlass never intended to produce any new child pornography, but instead only to sell Johnston already-existing images. According to Johnston, there was only a "one-way" agreement; because Switlass and he never had a shared criminal intent, there was never a "meeting of the minds" required to support a conspiracy conviction.[1]

---

[1] The government's position that Switlass's intent is irrelevant so long as Johnston honestly believed he was entering a conspiracy contradicts well-established law. The essence of a conspiracy is a "meeting of the minds." If "two defendants act in concert to achieve a different goal, the

Although Johnston's version of events is not entirely implausible, the jury was entitled to reject it. Notably, Johnston's gloss on the evidence overlooks the almost contemporaneous events of his solicitation to Swittlass, her request for money to undertake the filming, and Johnston's confirmation that they were "partners." Even if the evidence regarding the production date of the photographs had been iron-clad (which it was not), a "rational factfinder" could have concluded beyond a reasonable doubt that the chat records nonetheless demonstrated the existence of an agreement between Johnston and Swittlass to produce child pornography. *See Jackson*, 443 U.S. at 324. We decline to second-guess a reasonable jury's interpretation of the evidence.

## III.    COMPUTER SEARCH

The government obtained a warrant in September 2006 to search Johnston's computer for child pornography, sexual activity with children, and the production, distribution, possession, or receipt of child pornography. Initially the government performed what it termed "preliminary forensics" and a "bare minimum" scan of his home office computer. Johnston challenges a much later search, in 2011, when a government agent viewed Johnston's emails, chat logs, and internet search history. He argues that this search exceeded the scope of the warrant and thus that evidence relating to his convictions for conspiracy to produce child pornography and conspiracy to travel overseas for the purpose of having illicit sex was obtained through an illegal search.

government has not shown a meeting of the minds as to a common scheme or plan." *United States v. Lorenzo*, 995 F.2d 1448, 1459 (9th Cir. 1993).

The principles relating to execution of search warrants are well known.  To pass constitutional muster, the "search must be one directed in good faith toward the objects specified in the warrant or for other means and instrumentalities by which the crime charged had been committed." *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978).  When the defendant challenges the manner in which a search was conducted, we examine the language of the search warrant and ask whether "a reasonable officer [would] have interpreted the warrant to permit the search at issue." *United States v. Gorman*, 104 F.3d 272, 274 (9th Cir. 1996). Thus, a search authorized by a valid warrant may nonetheless be unreasonable if the officers conducting the search exceed the scope of the warrant and, for example, begin looking for files that are not related to the subject of the search warrant. *See United States v. Hill*, 459 F.3d 966, 978 (9th Cir. 2006).

In September 2006, federal agents obtained a search warrant to search Johnston's home, computers, and any other "computer-related" hardware, software, and equipment for:

- Any and all visual depictions of minors engaging in sexually explicit conduct in any format or media, including, but not limited to, computer photographs . . . [and] information pertaining to the sexual interest in child pornography, sexual activity with children or the production, distribution, possession or receipt of child pornography[;]

- Correspondence pertaining to the possession, receipt, distribution, or advertisement of [child pornography;]

- Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, offering to transmit [child pornography; and]

- Records or other items which evidence ownership or use of computer equipment found in the . . . residence.

Johnston did not challenge the scope or legality of the warrant. At an evidentiary hearing on Johnston's motion to suppress, Special Agent Brian Cardwell of the California Department of Justice testified regarding the methods employed to search Johnston's computer. The search took place in three distinct phases. On September 6, 2006, Agent Cardwell entered Johnston's home and used specialized software to conduct a "forensic preview." The forensic preview preserves data on the computer and performs a brief scan of its hard drive; within "five to ten minutes" the software indicated that there were child pornography videos stored on the computer. About a week later, Cardwell conducted a "bare minimum" forensic scan of the computer. He used software called "EnCase" to create a gallery of all the images and videos on the computer. Cardwell browsed that gallery to confirm that it included images and videos depicting child pornography and then created a compact disc for use by prosecutors.

A second review of the computer data occurred some five years later in the spring of 2011, after Johnston declined to accept a plea deal. During this search, Cardwell repeated his previous search for child pornography, then perused Johnston's internet history and email correspondence.

Cardwell also began looking at files associated with Johnston's credit card number and e-mail address.

The third, and most exhaustive, phase of the search began in July of 2011. Over the course of several sessions, Cardwell browsed and searched Johnston's email, chat logs, and "unallocated space."  He searched for generic keywords such as "child porn," "pedo," "Baby J," "Lolita," and "hussy fan." Cardwell also searched the computer using Johnston's credit card number, Yahoo screen name, and Western Union account information.  These efforts turned up evidence about Johnston's travels abroad for the purpose of having sex with minors and agreement with Switlass to produce child pornography.

Johnston claims that the third review was nothing more than "rummaging for more offenses."  He urges us to reverse the district court's denial of the suppression motion and adopt the reasoning in *United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999).  The difficulty with this argument is that *Carey* presented an entirely different situation—the government agent was searching a computer for evidence of drug sales when he stumbled across child pornography images. Although the search warrant directed the agent to look only for evidence of narcotics activities, he began opening computer files that he believed would contain child pornography images.  Not surprisingly, the Tenth Circuit held that the search violated the Fourth Amendment because the agent "abandoned" his search for drug evidence and started an entirely new, warrantless search.  *Id.* at 1273.

Nothing of the sort happened here.  To begin, the plain language of the warrant authorized the government to search not only for child pornography, but also evidence of sexual

activity with children, correspondence related to child pornography, and "items which evidence ownership or use of computer equipment found in the . . . residence." Each of the search methods Cardwell employed related directly to this mandate. Nothing suggests that Agent Cardwell directed his search efforts towards anything other than child pornography, sexual activity with children, and Johnston's ownership and control over the computer. He was not digging around in unrelated files or locations that might have prompted the need for a second warrant. Cardwell's discovery of evidence of additional crimes is a reflection of the practical reality that Johnston's statements about child pornography were intermingled with chats about foreign trips for the purpose of having sex with minors and discussion about buying a camera to produce explicit images of children.

## IV.    SENTENCING PROCEEDING

Johnston's last challenge is that the district court erred at sentencing by referencing facts that were stripped from the draft presentence report and admonishing him for failing to apologize for his actions.

Under Federal Rule of Criminal Procedure 32(i)(3)(B), the sentencing judge "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." In *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc), we held that it is a "significant procedural error" for a sentencing judge to "choose a sentence based on clearly erroneous facts."

During sentencing proceedings, the district court made reference to factual matters that were stricken from Johnston's presentence report.  He stated that Johnston had traveled outside of the United States "to have contact with these prepubescent females," and to "engage in sex with 12- to 15-year-old virgins."  The judge also noted that Johnston had molested his stepchildren in the 1980s, and praised the prosecutor for not bringing those children to the sentencing hearing to testify.

While these comments raise the specter of sentencing error, the district court made clear that it took into account only "what was found by the jury" in this case.  The court stated:

> I'm not taking [the abuse allegations] into consideration right now . . . .  I'm only taking into account what was found by the jury in this particular case.

> The previous judge excluded a number of things from that jury, and there were things that were stricken from the probation report.  I'm taking the probation report and the jury's findings as they are.  I don't need to go back any further than what I have in front of me.

This statement clarified that Johnston's sentence was based solely on facts that were proven to the jury and the undisputed sections of the presentence report.  The district court did not violate either Rule 32 or the teaching of *Carty*.

Johnston also claims that he is entitled to resentencing because, in violation of *Mitchell v. United States*, 526 U.S.

314, 321 (1999), the district court drew an adverse inference from Johnston's failure to testify. The question of how the Fifth Amendment privilege interacts with the legitimate sentencing consideration of lack of remorse is a difficult one. The Supreme Court expressly declined to address this issue in *Mitchell*. *Id.* at 326 ("Whether silence bears upon the determination of lack of remorse . . . is a separate question . . . . [W]e express no view on it.").

Although the district court commented on Johnston's reticence at the sentencing hearing, Judge England also explicitly recognized that remaining silent was "his right." Particularly when considered in the context of the district court's careful review of the record and extensive explanation of the sentence imposed, this comment reinforces that Johnston's sentence was not affected by an adverse inference drawn from his silence. He is not entitled to resentencing on this ground.

**AFFIRMED in part, VACATED in part, and REMANDED.**