# Illinois Official Reports

## Appellate Court

---

### *People v. McCavitt*, 2019 IL App (3d) 170830

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN T. McCAVITT, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0830 |
| Filed | November 26, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 14-CF-282; the Hon. Albert L. Purham Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Joshua B. Kutnick and Taylor Spratt, both of Chicago, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, David J. Robinson, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE LYTTON delivered the judgment of the court, with opinion.<br>Justice McDade concurred in the judgment and opinion.<br>Justice Wright dissented, with opinion. |

**OPINION**

¶ 1    Defendant John T. McCavitt was charged with 17 counts of child pornography based on images found on his personal computer. He filed a motion to suppress, arguing that the search of his computer was unlawful. Following a hearing, the trial court denied defendant's motion, and the case proceeded to trial. The jury found him guilty of 15 counts of child pornography. The trial court sentenced defendant on 11 counts to five years in prison, probation, and mandatory supervised release. On appeal, defendant argues that (1) the trial court erred in denying his motion to suppress, (2) he was denied effective assistance of counsel, (3) the trial court erred in admitting certain evidence at trial, and (4) the prosecutor's statements during closing argument warrant reversal. We reverse, finding that the trial court erred in denying defendant's motion to suppress.

¶ 2                                          I. BACKGROUND

¶ 3    On July 17, 2013, the Illinois State Police obtained a search warrant to search the home of defendant, a police officer employed by the Peoria Police Department. The warrant authorized the seizure of "any electronic media cable [*sic*] of video/audio recording" and "any electronic storage media capable of stor[ing] pictures, audio or video." During the execution of the warrant, officers seized defendant's computer.

¶ 4    On July 24, 2013, the Illinois State Police sought and obtained a subsequent search warrant authorizing law enforcement personnel to search defendant's computer for "any and all digital images" and "any evidence of" aggravated criminal sexual assault, unlawful restraint, and unauthorized video recording/live video transmission. Detective Jeff Avery of the Peoria County Sheriff's Department, a forensic examiner, examined defendant's computer. He removed the hard drive from the computer and made an exact copy, or mirror image, of it using EnCase software. A copy of the hard drive, called "EnCase evidence file," was saved on Avery's computer.

¶ 5    Based on images police found on defendant's computer, the State charged defendant with aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(4) (West 2012)) and criminal sexual assault (*id.* § 11-1.20(a)(1)) on August 6, 2013. That case proceeded to trial. On March 19, 2014, defendant was found not guilty of all charges. On that same day, defendant orally requested the return of his personal property, including his computer. The court denied the request, stating that defendant's property would be returned to him when everything "cooled down."

¶ 6    On March 20, 2014, the Peoria Police Department initiated a formal investigation of defendant. The next day, Peoria police detective James Feehan, a computer forensics examiner, requested a copy of the EnCase file from Avery. Avery delivered the EnCase file to Feehan the same day. On March 24, 2014, Feehan began a digital forensic analysis on the EnCase file and saw two images of what he believed to be child pornography. On the same day, defendant filed a written motion seeking to have his property returned to him. That motion was never ruled on. On March 28, 2014, defendant was arrested and charged with unauthorized video recording (720 ILCS 5/26-4(a) (West 2014)).

¶ 7    On April 1, 2014, Feehan sought and obtained a search warrant to search defendant's EnCase file for images of child pornography. After further examination, Feehan discovered

additional images of child pornography. On April 28, 2014, the State filed a 10-count indictment against defendant, charging him with seven counts of aggravated child pornography (720 ILCS 5/11-20.1B (West 2010)), a Class 2 felony, and three counts of child pornography (720 ILCS 5/11-20.1 (West 2012)), a Class 3 felony, based on five images found in defendant's EnCase file.

¶ 8 Defendant filed a motion to suppress, arguing that Feehan had no authority to obtain and examine the contents of the EnCase file in March 2014. A hearing was held on the motion. At the hearing, Feehan testified that he was aware that defendant was acquitted of the sexual assault charges on March 19, 2014, and that no other charges were pending. On March 21, 2014, Feehan requested defendant's EnCase file from Avery based on the Peoria Police Department's internal investigation of defendant. Feehan knew that the EnCase file had been seized in connection with the sexual assault charges filed against defendant. Feehan testified that he "knew that there was [*sic*] other victims that could be identified during the formal [investigation] that would turn criminal." Feehan did not believe he needed a search warrant or other court order to obtain the EnCase file "[b]ecause of case law that [he] was aware of" since defendant's computer was previously seized "[p]ursuant to a lawful search warrant." The trial court entered an order denying defendant's motion to suppress.

¶ 9 On July 10, 2015, the State amended its indictment and charged defendant with seven additional counts of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2014)), a Class 2 felony, based on seven additional images found in defendant's EnCase file. The case proceeded to a jury trial in July 2016.

¶ 10 At trial, Feehan testified that he has been a police officer for 21 years and been employed by the Peoria Police Department for 18 years. He has been a digital forensic examiner for 17 years and completed approximately 500 hours of digital forensics training. The State introduced into evidence 12 images Feehan found in defendant's EnCase file. Those images formed the basis of the child pornography charges against defendant.

¶ 11 The jury found defendant guilty of 15 of the 17 counts of child pornography. Defendant filed posttrial motions, which the trial court denied. The trial court accepted the jury's verdict as to 10 counts of Class 2 felony child pornography and one count of Class 3 felony child pornography. The trial court sentenced defendant to five years in prison on one count, followed by mandatory supervised release of three years to life. The court sentenced defendant to probation of 48 months on the remaining 10 counts, to be served consecutively to defendant's prison sentence.

¶ 12                                                    II. ANALYSIS

¶ 13 Defendant first argues that the trial court erred in denying his motion to suppress. He contends that Feehan's search of his EnCase file eight months after the initial warrant was issued and following his acquittal of sexual assault charges violated his fourth amendment rights. The State responds that defendant had no expectation of privacy in his EnCase file, which had been confiscated pursuant to a valid warrant. The State alternatively contends that even if a fourth amendment violation occurred, the evidence should not be suppressed because Feehan acted in good faith.

¶ 14                                          A. Fourth Amendment

¶ 15      The fourth amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Similarly, article I, section 6, of the Illinois Constitution states that "people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches [and] seizures." Ill. Const. 1970, art. I, § 6. Illinois courts have interpreted the search and seizure provisions of the Illinois Constitution in "limited lockstep" with the fourth amendment. *People v. Caballes*, 221 Ill. 2d 282, 313-14 (2006).

¶ 16      Fourth amendment protections apply where (1) the person subject to a search or seizure had a subjective expectation of privacy in the thing seized or place searched and (2) that expectation of privacy is one that society accepts as objectively reasonable. *California v. Greenwood*, 486 U.S. 35, 39 (1988). A threshold question in fourth amendment analysis is whether a defendant has a reasonable expectation of privacy in the things and places searched. See *People v. Collins*, 106 Ill. 2d 237, 265 (1985).

¶ 17      Individuals have a reasonable expectation of privacy in their personal computers and computer files. *United States v. Heckenkamp*, 482 F.3d 1142, 1147 (9th Cir. 2007); *United States v. Broy*, 209 F. Supp. 3d 1045, 1053-54 (C.D. Ill. 2016); *People v. Blair*, 321 Ill. App. 3d 373, 381 (2001) (Homer, J., specially concurring). However, an owner's expectation of privacy is "significantly reduced" once an item has been lawfully seized and searched by police. *United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir. 1983). "The contents of an item previously searched are simply no longer private." *Id.* Once an item has been lawfully seized and searched, subsequent searches may be conducted without a warrant as long as the item remains in the continuous possession of the police. *Id.*; *United States v. Pace*, 898 F.2d 1218, 1243 (7th Cir. 1990).

¶ 18      The fourth amendment does not require that search warrants contain expiration dates. *United States v. Gerber*, 994 F.2d 1556, 1559 (11th Cir. 1993). Additionally, "it contains no requirements about *when* the search or seizure is to occur or the *duration*." (Emphases in original.) *Id.* The relevant test is the reasonableness of the search under all of the circumstances. *Coolidge v. New Hampshire*, 403 U.S. 443, 509 (1971) (Black, J., concurring and dissenting, joined by Burger and Blackmun, JJ.). Reasonableness must be decided on a case-by-case basis. *Id.* at 509-10.

¶ 19      "[U]nder current law there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence seized falls within the scope of a warrant." *United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012). "[C]omputer searches are not, and cannot be subject to any rigid time limit because they may involve much more information than an ordinary document search, more preparation and a greater degree of care in their execution." *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 66 (D. Conn. 2002). Nevertheless, the fourth amendment requires the government to complete its review of electronic data "within a 'reasonable' period of time." *Metter*, 860 F. Supp. 2d at 215. A review of seized electronic data is reasonable even if it takes several years to complete as long as the search ends prior to trial and does not exceed the parameters of the original search warrant. See *United States v. Johnston*, 789 F.3d 934, 942-43 (9th Cir. 2015).

¶ 20      Because it is impractical to forensically examine a hard drive in a person's home or office, copying electronic data by creating a mirror image of a computer hard drive for later analysis offsite had become a common practice that does not violate the fourth amendment. See *United*

*States v. Veloz*, 109 F. Supp. 3d 305, 313 (D. Mass. 2015); *In re Search of Information Associated With the Facebook Account Identified by the Username Aaron.Alexis That Is Stored at Premises Controlled by Facebook, Inc.*, 21 F. Supp. 3d 1, 9 (D.D.C. 2013). Additionally, retention of a mirrored hard drive during the pendency of an investigation and trial does not violate the fourth amendment. See *United States v. Ganias*, 824 F.3d 199, 225 (2d Cir. 2016).

¶ 21    However, the government may not retain seized property indefinitely. *United States v. Premises Known as 608 Taylor Avenue, Apartment 302, Pittsburgh, Pennsylvania*, 584 F.2d 1297, 1302 (3d Cir. 1978). The fourth amendment may be violated when the State fails to quickly return information contained in a mirrored hard drive that is not within the scope of the warrant. See *Veloz*, 109 F. Supp. 3d at 313. "[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items ***." *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988). It violates the fourth amendment for the State to seize and retain all data in a mirrored hard drive regardless of whether a warrant authorizes its seizure. See *In re Search*, 21 F. Supp. 3d at 10; *People v. Thompson*, 28 N.Y.S.3d 237, 258-59 (Sup. Ct. 2016). A New York court explained as follows:

> "When a warrant is issued which authorizes a search of paper records, the government is entitled to search the files and seize responsive material. They are not permitted to search the files, seize responsive material and then retain files they have never identified as relevant for multiple years, because, at some later time, they might want to search the files again. A search warrant which authorizes a search of voluminous digital records is no different. As Defendant's counsel during an argument pointed out, overseizure is 'a courtesy that was developed for law enforcement.' It is not a license for the government to retain tens of thousands of a defendant's non-relevant personal communications to review and study at their leisure for years on end." *Thompson*, 28 N.Y.S.3d at 258-59.

¶ 22    All property seized must be returned to its rightful owner once the criminal proceedings have terminated. *Cooper v. City of Greenwood*, 904 F.2d 302, 304 (5th Cir. 1990); *United States v. Farrell*, 606 F.2d 1341, 1343 (D.C. Cir. 1979); *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir. 1977). When no charges are pending against an individual, any of the individual's property in the possession of the State should be immediately returned to him. See *People v. Jaudon*, 307 Ill. App. 3d 427, 447 (1999) (citing 725 ILCS 5/108-2 (West 1996)); *People v. Jackson*, 26 Ill. App. 3d 845, 848-49 (1975). After criminal proceedings conclude, the government has no right to retain a defendant's property. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1213 (10th Cir. 2001). "[I]t is fundamental to the integrity of the criminal justice process that property involved in the proceeding, against which no Government claim lies, be returned promptly to its rightful owner." *United States v. Wilson*, 540 F.2d 1100, 1103 (D.C. Cir. 1976).

¶ 23    In reviewing a trial court's ruling on a motion to suppress, mixed questions of law and fact are presented. *People v. Jones*, 215 Ill. 2d 261, 267 (2005). Findings of fact made by the trial court will be upheld on review unless they are against the manifest weight of the evidence. *Id.* at 268. However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted. *Id.* Thus, we review *de novo* the ultimate question of whether the evidence should have been suppressed. *Id.*

¶ 24     Here, there is no question that defendant had an expectation of privacy in his computer files before his computer was confiscated by police pursuant to the search warrant issued on July 17, 2013. See *Heckenkamp*, 482 F.3d at 1147; *Broy*, 209 F. Supp. 3d at 1053-55; *Blair*, 321 Ill. App. 3d at 381 (Homer, J., specially concurring). Defendant's expectation of privacy significantly diminished once the police took possession of the computer, and that diminished expectation of privacy continued until his trial was complete. See *Burnette*, 698 F.2d at 1049; *Johnston*, 789 F.3d at 942. However, once defendant's trial was over, defendant could again expect that he had a right to privacy in the contents of his computer. See *United States v. Hubbard*, 650 F.2d 293, 303 (D.C. Cir. 1980) ("the party from whom materials are seized in the course of a criminal investigation retains a protectible [*sic*] property interest in the seized materials" because he is entitled to their return when the criminal proceedings conclude); *Thompson*, 28 N.Y.S.3d at 259 (State's unreasonable retention of an individual's files violates the individual's reasonable expectation of privacy).

¶ 25     Feehan violated defendant's right to privacy when he searched defendant's EnCase file without a warrant in March 2014. While police lawfully created the EnCase file to forensically examine defendant's hard drive, they were not entitled to retain the entire EnCase file indefinitely. See *Premises Known as 608 Taylor Avenue*, 584 F.2d at 1302. Rather, police were required to examine the contents of the mirrored hard drive and retain only those files that fit within the scope of the July 17, 2013, warrant. See *Matias*, 836 F.2d at 747; *Veloz*, 109 F. Supp. 3d at 313; *In re Search*, 21 F. Supp. 3d at 10; *Thompson*, 28 N.Y.S.3d at 258-59. While police could retain the relevant files throughout defendant's trial, once defendant's trial ended, police were not entitled to retain any portion of the EnCase file, much less the entire file. See *Jaudon*, 307 Ill. App. 3d at 447; *Jackson*, 26 Ill. App. 3d at 848-49; *Rodriguez-Aguirre*, 264 F.3d at 1213.

¶ 26     Because police had no authority to retain possession of the EnCase file after defendant's criminal trial ended, Feehan's warrantless search of the EnCase file violated defendant's fourth amendment rights.

¶ 27                              B. Good-Faith Exception

¶ 28     "The fourth amendment is silent about suppressing evidence obtained in violation of its command." *People v. Martin*, 2017 IL App (1st) 143255, ¶ 38 (citing *Davis v. United States*, 564 U.S. 229, 236 (2011)). The exclusionary rule "was created by the Supreme Court to 'compel respect for the constitutional guaranty.' " *Id.* (quoting *Davis*, 564 U.S. at 236). Application of the exclusionary rule is not automatic following a fourth amendment violation. *People v. LeFlore*, 2015 IL 116799, ¶ 22. Rather, the exclusionary rule should be applied only when it can achieve its purpose, which is to deter future fourth amendment violations. *Id.*

¶ 29     When the circumstances show that the police acted with an objectively reasonable good-faith belief that their conduct was lawful, there is no illicit conduct to deter. *Id.* ¶ 24. In determining whether the good-faith exception applies, a court must ask "whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984). Once a defendant proves a violation of the fourth amendment, the State has the burden to prove the good-faith exception applies. *People v. Morgan*, 388 Ill. App. 3d 252, 264 (2009). Whether the good-faith exception to the exclusionary rule applies presents a legal question that is reviewed *de novo*. *People v. Manzo*, 2018 IL 122761, ¶ 67.

¶ 30　　Section 114-12(b)(2)(i) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-12(b)(2)(i) (West 2016)) provides that a peace officer acts in " '[g]ood faith' " when he obtains evidence "pursuant to a search or an arrest warrant obtained from a neutral and detached judge, which warrant is free from obvious defects other than non-deliberate errors in preparation and contains no material misrepresentations by any agent of the State, and the officer reasonably believed the warrant to be valid." The State concedes that the July 17, 2013, warrant "did not authorize Feehan's search, as that warrant had already been executed and, after investigation and criminal proceedings, defendant was acquitted." However, the State argues that Feehan reasonably believed that he could rely on the eight-month-old warrant to justify his search of defendant's EnCase file. We disagree.

¶ 31　　At defendant's trial, Feehan testified that he has been a police officer for more than 20 years and a forensic examiner for 17 years. When he requested defendant's EnCase file, he knew that defendant had been acquitted of the sexual assault charges against him and that no new charges had been filed. He also knew that defendant's EnCase file was created when defendant's computer was seized eight months earlier pursuant to the warrant issued in defendant's sexual assault case. Because the warrant issued in July 2013 had been executed and the charges stemming from the files found pursuant to that warrant were no longer pending, Feehan should have known that police had no right to retain, much less search, the EnCase file. See *Jaudon*, 307 Ill. App. 3d at 447; *Jackson*, 26 Ill. App. 3d at 848-49; *Rodriguez-Aguirre*, 264 F.3d at 1213. We find that no reasonably trained officer would conclude that he could perform a warrantless search of a mirrored hard drive that he had no right to possess following the termination of the criminal case against defendant. Had Feehan obtained a search warrant prior to searching the EnCase file, the good-faith exception would likely apply. See *Ganias*, 824 F.2d at 225. Because Feehan failed to do so, the good-faith exception does not apply.

¶ 32　　With no basis for avoiding the exclusionary rule, we find that the evidence in this case should have been suppressed. Thus, we reverse defendant's conviction and remand for further proceedings.

¶ 33　　　　　　　　　　　　　　　　III. CONCLUSION
¶ 34　　The judgment of the circuit court of Peoria County is reversed and the cause is remanded.

¶ 35　　Reversed and remanded.

¶ 36　　JUSTICE WRIGHT, dissenting:
¶ 37　　The majority holds defendant's computer tower and the information harvested from the computer tower's hard drive should have been returned to defendant immediately once the criminal proceedings terminated with defendant's acquittal in Peoria County case No. 13-CF-741 on March 19, 2014. Based on the unique procedural facts of this case, I respectfully disagree and would affirm defendant's conviction in Peoria County case No. 14-CF-282.

¶ 38　　　　　　　　　　　　A. Peoria County Case No. 13-CF-741
¶ 39　　As the majority states, the trial judge, Judge Lyons, denied defendant's oral motion for the return of confiscated property in a previous criminal prosecution in Peoria County case No. 13-

CF-741 on March 19, 2014, the date of the acquittal.[1] After Judge Lyons denied the oral request for the return of confiscated property, defendant filed a written motion for the return of the confiscated property in Peoria County case No. 13-CF-741. As the majority notes in its decision, the written motion was never ruled upon by the trial court. To me, until the written motion to return confiscated property is disposed of or withdrawn in Peoria County case No. 13-CF-741, that case has not been concluded.

¶ 40    Assuming for the sake of argument that the majority is correct and the acquittal concluded the criminal proceedings in Peoria County case No. 13-CF-741, the trial judge's denial of defendant's oral motion now stands as law of the case and represents an unappealable court order. Respectfully, I submit that our court lacks jurisdiction to review any ruling in Peoria County case No. 13-CF-741 absent a notice of appeal in that case.

¶ 41                          B. Peoria County Case No. 14-CF-282

¶ 42    Turning to the instant appeal in Peoria County case No. 14-CF-282, I emphasize that Judge Brown's findings of fact have not been challenged by defendant for purposes of Peoria County case No. 14-CF-282. It is uncontested that the *copy* of defendant's hard drive contained in the EnCase file remained in the continuous possession of law enforcement at the time Feehan viewed the images at issue. The trial court also determined that Feehan examined a *copy* of the hard drive contained in an existing police file on March 24, 2014.

¶ 43    The court further noted that the 2013 seizure of information had "been approved for search and seizure by a neutral magistrate when the warrant was issued in 2013." Importantly, the court made an express *finding* that Feehan's examination of a *copy* of this EnCase file on March 24, 2014, was "within the scope of the [2013] original warrant." This finding has not been challenged. Once Feehan made this discovery of images while conducting an internal investigation of the alleged misconduct of an officer, it is undisputed that Feehan stopped his investigation and obtained another search warrant to proceed with the investigation in 2014. For purposes of this appeal, defendant does not challenge the validity of either the 2013 or the 2014 search warrant.

¶ 44    After careful review of this record, I conclude that Judge Brown's findings of fact are not contrary to the evidence. I wholeheartedly agree with Judge Brown's analysis based on the court's well-documented findings of fact. For the sake of clarity, I agree that Feehan was merely reviewing information that had already been lawfully seized by another detective and made a part of that police officer's working file. Based on this record, I also agree with Judge Brown's conclusion that defendant's *reasonable* expectation of privacy was not violated for fourth amendment purposes because those expectations were diminished once defendant lawfully lost possession of the computer tower pursuant to the 2013 search warrant.

¶ 45    I would be remiss if I did not recognize the exemplary efforts put forth by Judge Brown in this matter. Judge Brown meticulously documented his findings of fact and carefully recited each step of his analysis in a comprehensive, written, court order. This order made the record submitted for our review easily digestible. In fact, I could not have restated the applicable law supporting the trial judge's decision any better than the trial judge did in this case. Consequently, I would affirm the trial judge's ruling.

---

[1]According to Judge Brown's written order in Peoria County case No. 14-CF-282, the property, namely the computer tower, was in the possession of the circuit clerk.